IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARI MLEZIVA, ) | |
| ) | |
| Plaintiff, ) | Case No. 18-cv-5260 |
| ) | |
| v. ) | |
| ) | |
| GLAXOSMITHKLINE LLC, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, SHARI MLEZIVA, by counsel, alleges as follows:

### Parties

1. Shari Mleziva (hereinafter "Mleziva") worked for GlaxoSmithKline LLC (referred to hereinafter as "GSK") from July 1996 to May 2018.

2. GSK is a global pharmaceutical company.

3. Mleziva was hired as a Pharmaceutical Consultant and by the time of the events alleged below, she was a Sales Specialist Pharma.

4. At all times relevant to this suit, Mleziva worked in the Respiratory Division, Illinois Region.

### Jurisdiction and Venue

5. This action arises under the Age Discrimination in Employment Act, as amended, codified at 29 U.S.C. § 621 et seq. ("ADEA") and the Americans with Disabilities Act of 1990, as amended, codified at 42 U.S.C. 12101, et seq. ("ADA").

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

1

7. Mleziva worked for GSK in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District. (Mleziva's immediate supervisor resides in Arlington Heights). Thus, venue is appropriate here.

8. GSK is a Delaware LLC.

9. GSK conducts extensive business in Illinois.

**Count I: Age Discrimination in Violation of the ADEA**

10. Plaintiff re-alleges the above paragraphs as if stated here.

11. When Mleziva started with GSK, she was 31 years old.

12. By August 2016, Mleziva was 52 years old.

13. In August 2016, Mleziva was assigned to a new manager, Megan Wallace, who was much younger than Mleziva.

14. Beginning in December 2016 and continuing until Mleziva's constructive discharge on May 21, 2018, Wallace (and other GSK agents) created a hostile work environment for Mleziva because of her age. This environment included unfair criticism, unwarranted negative feedback, multiple written negative "coachings," "performance counselings," a written warning on July 25, 2017, and the removal of Mleziva from selling a new drug (which he had previously been told she would be trained to sell) in July 2017.

15. On July 26, 2017, Mleziva was forced to go off work (on disability leave) because of the anxiety she was experiencing from the hostile work environment GSK had created because of her age.

16. On January 10, 2018, while out on disability leave, Mleziva requested to work under a new manager to try to avoid this hostile work environment.

17. GSK denied this request.

18. On March 7, 2018 (after Mleziva had been back to work from disability for 9 days), she was written up again.

19. On March 21, 2018, GSK offered Mleziva a "Termination by Agreement" to try to force her out of the company because of her age.

20. Mleziva did not accept.

21. GSK forced many other of its employees over forty years old to leave through these "Termination by Agreement" offers.

22. On April 11, 2018 and again on May 1, 2018, Mleziva was written up. This was part of the continued effort by GSK to force her out because of her age by creating a hostile work environment.

23. On May 1, 2018, GSK again offered her a Termination by Agreement, again because of her age.

24. She did not accept.

25. On May 21, 2018, Mleziva was forced to resign due to the hostile work environment she was facing based on her age.

26. At the time of her resignation, Mleziva was 53 years old.

27. Younger employees did not face these hostile work environments and offers of "Termination by Agreement."

28. GSK's actions, as detailed above, violate the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").

29. These violations were willful.

30. As a result of these violations, Mleziva has lost wages and benefits, which damages continue.

WHEREFORE, Plaintiff requests that Defendant be held liable; and that she be awarded all damages to which she is entitled including back pay and the value of lost benefits, liquidated damages (or prejudgment interest), reinstatement (or front pay), injunctive relief (an order to stop this pattern of age discrimination), attorney's fees and costs.

### Count II: Denial of Reasonable Accommodation in Violation of the ADA

31. Plaintiff re-alleges paragraphs 1-9 as if retyped here.

32. In August 2016, Shari was diagnosed with cervical spine stenosis and spondylosis.

33. These physical impairments substantially limited one or more of her major life activities, including sleeping, lifting, prolonged sitting, and working.

34. Mleziva shared these impairments with her manager beginning in September 2016.

35. On November 21, 2016, Mleziva discussed a move to part time schedule with her manager, to accommodate her disability.

36. On February 27, 2017, Mleziva made a formal request via email, to work part time, to accommodate her disability.

37. On March 6, 2017, Mleziva again made a formal request for accommodation, this time specifically to work three days per week instead of five, to accommodate her disability.

38. On March 20, 2017, GSK denied this request.

39. This denial was unreasonable.

40. Mleziva continued working full time until July 26, 2017.

41. Working 5 days per week (which involved extensive driving) was causing her physical and mental pain and suffering.

42. On July 26, 2017, Mleziva was forced to go out on disability leave because of the pain and stress she was experiencing from being denied reasonable accommodation (working 5 days per week instead of 3).

43. Mleziva returned to work on February 26, 2018.

44. On March 23, 2018, Mleziva again requested reasonable accommodation, specifically "a territory or position that requires less driving…A part-time position would be ideal" in order to accommodate her disability.

45. GSK denied this request.

46. This denial was unreasonable.

47. On May 21, 2018, Mleziva was forced to resign because GSK had denied her request for reasonable accommodation (to work part time instead of full).

48. GSK violated the ADA by denying Mleziva reasonable accommodation for her disability.

49. As a result of GSK's violations, Mleziva has lost wages and benefits, which damages continue, and she has suffered physically, mentally and financially.

50. Punitive damages are necessary to punish GSK and to deter it and other companies from violating the ADA.

WHEREFORE, Plaintiff requests that Defendant be held liable; and that she be awarded all damages to which she is entitled including compensatory damages (for physical and mental pain and suffering), punitive damages, back pay and benefits, prejudgment interest on back pay, front pay, a tax component as other equitable relief, fees, expenses (including expert expenses), and costs.

### Count III: Retaliation in Violation of the ADEA

51. Plaintiff re-alleges paragraphs 1-9 as if retyped here.

52. Mleziva filed a Charge of Discrimination for age discrimination against GSK on September 15, 2017.

53. Shortly after, GSK was notified of Mleziva's charge.

54. On January 10, 2018 and again on March 23, 2018, Mleziva requested to work under a new manager to avoid the age discrimination she was facing. GSK denied these requests. Shortly thereafter, a different employee from Shari's team was transferred to the manager Mleziva had asked to be switched to.

55. GSK refused to transfer Mleziva in retaliation for her filing an EEOC charge.

56. Mleziva was given a write up on March 7, 2018, in retaliation for her charge.

57. On March 21, 2018, GSK offered Mleziva a "Termination by Agreement" to try to force her out of the company (which she did not accept), as further retaliation for her EEOC charge.

58. Mleziva was given a writeup on April 11, 2018, in retaliation for her charge.

59. On May 1, 2018, Mleziva was given a Final Warning and offered a Termination by Agreement, as further retaliation for her EEOC charge.

60. On May 21, 2018, Mleziva was forced to resign because of GSK's retaliation.

61. GSK has violated the anti-retaliation provisions of the ADEA.

62. As a result, Mleziva has lost wages and benefits (which damages continue) and suffered emotional distress.

63. Punitive damages are necessary to punish GSK and to deter it and other companies from retaliating against its employees based on protected activity.

WHEREFORE, Plaintiff requests that Defendant be held liable and that she be awarded all damages to which she is entitled including back pay and the value of lost benefits, liquidated damages (or prejudgment interest), equitable relief (reinstatement or front pay), injunctive relief (an

6

order to stop age discrimination), attorney's fees and costs, plus consequential damages, compensatory damages, punitive damages.

**Count IV: Retaliation in Violation of the ADA**

64. Plaintiff re-alleges paragraphs 1-9 as if retyped here.

65. Mleziva requested reasonable accommodation, as detailed above, beginning in November 2016.

66. Very shortly thereafter, beginning in December 2016, Wallace (and other GSK agents) created a hostile work environment for Mleziva in retaliation for her having requested accommodation (or to interfere with her request). This environment included unfair criticism, unwarranted negative feedback, multiple written negative "coachings," "performance counselings," a written warning on July 25, 2017, and the removal of Mleziva from selling a new drug (which he had previously been told she would be trained to sell) in July 2017.

67. On July 25, 2017, Mleziva was given a "First Warning." This was retaliation for seeking reasonable accommodation

68. At the end of July 2017, Megan told Mleziva she would not be selling a new drug as planned. This was retaliation for seeking reasonable accommodation.

69. Mleziva filed a Charge of Discrimination for disability discrimination against GSK on September 15, 2017.

70. Shortly after, GSK was notified of Mleziva's charge.

71. On January 10, 2018 and again on March 23, 2018, Mleziva requested to work under a new manager. GSK denied these requests. Shortly thereafter, a different employee from Shari's team was transferred to the manager Mleziva had asked to be switched to.

72. GSK refused to transfer Mleziva in retaliation for her filing an EEOC charge.

73. Mleziva was given a write up on March 7, 2018, in retaliation for her charge.

74. On March 21, 2018, GSK offered Mleziva a "Termination by Agreement" (which she did not accept), as further retaliation for her EEOC charge.

75. Mleziva was given a writeup on April 11, 2018, in retaliation for her charge.

76. On May 1, 2018, Mleziva was given a Final Warning and offered a Termination by Agreement, as further retaliation for her EEOC charge.

77. On May 21, 2018, Mleziva was forced to resign because of GSK's retaliation.

78. GSK has violated the anti-retaliation provisions of the ADA, codified at 42 U.S.C.A. § 12203(a)-(b).

79. As a result of these violations, Mleziva has lost wages and benefits (which damages continue).

WHEREFORE, Plaintiff requests that Defendant be held liable, that judgment be entered against it, and that Plaintiff be awarded all damages to which she is entitled, including back pay and benefits, prejudgment interest, reinstatement (or front pay), other equitable relief, attorney's fees, expenses (including expert expenses), and costs.

## Jury Demand

80. Plaintiff demands trial by jury.

BY: __/s/ Julie O. Herrera__

DATE: 8/1/18

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
jherrera@julieherreralaw.com

8